IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| TINA T., | ) | |
| | ) | |
|    *Plaintiff*, | ) | |
| | ) | No. 17 C 50282 |
|    v. | ) | |
| | ) | Magistrate Judge |
| NANCY A. BERRYHILL, Acting | ) | Iain D. Johnston |
| Commissioner of Social Security, | ) | |
| | ) | |
|    *Defendant*. | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Tina T.'s ("Plaintiff") claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's memorandum, which this Court will construe as a motion for summary judgment (Dkt. 11) is **granted** and the Commissioner's memorandum, which this Court will also construe as a cross-motion for summary judgment (Dkt. 16) is **denied**.

**I. BACKGROUND**

**A. Procedural History**

Plaintiff filed her applications on July 3, 2014, alleging disability beginning on August 8, 2011, due to an inflamed tendon in the right foot, diabetes, high blood pressure, and depression. R. 193–08, 244. Plaintiff's applications were denied initially and on reconsideration. R. 88–89, 118–19.

On April 1, 2016, Plaintiff, represented by an attorney, testified, via video, at a hearing before an Administrative Law Judge ("ALJ"). R. 33–65. The ALJ also heard testimony from Ashok Frank Samlaska, a vocational expert ("VE"). *Id*.

On September 2, 2016, the ALJ issued a written decision finding that Plaintiff was not disabled. R. 15–27. On August 1, 2017, Plaintiff's request for review by the Appeals Council was denied, making the ALJ's decision the final decision of the Commissioner. R. 1-3. This action followed.

**B. ALJ Decision**

On September 2, 2016, the ALJ issued an unfavorable decision. R. 15–27. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. R. 17. At step two, the ALJ found Plaintiff suffered from severe impairments of diabetes mellitus, dysfunction of major joints (bilateral ankle) and obesity. *Id*. At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). R. 19.

Before step four, the ALJ found that she had the residual functional capacity ("RFC") to perform work at a sedentary exertional level, subject to some limitations.[1] R. 20. At step four, the ALJ concluded that Plaintiff was not capable of performing her past relevant work. R. 25. At step five, the ALJ found Plaintiff could perform other work, including surveillance monitor,

---

[1] She could occasionally climb ramps and stairs and never climb ladders, ropes, or scaffolds; she could occasionally balance, stoop, kneel, crouch, and crawl; she could not work in proximity to unprotected heights; and she must have the ability to use a cane while ambulating and to elevate her feet on a footstool while working. *Id*.

2

information clerk, and optical assembler. R. 26. Because of this determination, the ALJ found that Plaintiff was not legally disabled. R. 26–27.

## II. DISCUSSION

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If supported by substantial evidence, the Commissioner's factual findings are conclusive. *Id.* Substantial evidence exists if there is enough evidence that would allow a reasonable mind to determine that the decision's conclusion is supportable. *Richardson v. Perales*, 402 U.S. 389, 399-401 (1971). Accordingly, the reviewing court cannot displace the decision by reconsidering facts or evidence, or by making independent credibility determinations. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

However, the Seventh Circuit has emphasized that review is not merely a rubber stamp. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002) (a "mere scintilla" is not substantial evidence). A reviewing court must conduct a critical review of the evidence before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). Even when adequate record evidence exists to support the Commissioner's decision, the decision will not be affirmed if the Commissioner does not build an accurate and logical bridge from the evidence to the conclusion. *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). Moreover, federal courts cannot build the logical bridge on behalf of the ALJ. *See Mason v. Colvin*, No. 13 C 2993, 2014 U.S. Dist. LEXIS 152938, at *19 (N.D. Ill. Oct. 29, 2014).

This appeal focuses on an extremely narrow issue–namely, how high should Plaintiff's legs be elevated to allow her to work at a sedentary job. This Court has addressed this issue

previously. *See Cossey v. Berryhill*, No. 17 CV 50133, 2018 U.S. Dist. LEXIS 156511 (N.D. Ill. Sep. 13, 2018). The song remains the same. https://www.youtube.com/watch?v=DtVKz0rv4cg

Plaintiff testified that she could not work because of pain and foot and leg swelling. R. 40, 43. According to her, she had to keep her legs elevated.[2] R. 43. A review of the medical record showed that Plaintiff's right extremity issues began in 2011, after a workplace accident. R. 40, 638. Following the accident, Plaintiff was diagnosed with, among other things, posterior tibial tendonitis[3] of the right ankle. R. 323, 588, 630. A little over a year and a half later, after conservative treatments[4] failed, Plaintiff underwent surgery to repair the tibial tendon. R. 329–31. In 2013, an X-ray revealed post-surgical changes involving the surgical wires becoming detached from the screws that were attached to the right ankle. R. 436. But Plaintiff was advised to wait at least one year before considering surgery.[5] R. 399–402. Subsequently, in 2015, Plaintiff injured her left foot and ankle when she ruptured her Achilles tendon. R. 47, 887–89, 882–83. In 2016, David Yeager, DPM, noted that Plaintiff "would be required to have her legs elevated while at work." R. 967.

In his written decision, the ALJ acknowledged that Plaintiff would be required to elevate her legs. The ALJ concluded that Plaintiff would have to elevate her feet on a footstool while working. R. 20. However, the Court finds that in doing so the ALJ failed to build the required logical bridge between the evidence and his conclusion. *See Chase v. Astrue*, 458 F. App'x 553, 557 (7th Cir. 2012) (criticizing the ALJ's reasoning in determining the degree of foot elevation required by plaintiff.)

---

[2] Although she did not specify the height, she did request to put her legs up at the hearing. R. 54.
[3] A common problem with the foot or ankle that occurs when the tendon becomes inflamed. *Available at* https://orthoinfo.aaos.org/en/diseases--conditions/posterior-tibial-tendon-dysfunction/ (last viewed January 18, 2019).
[4] *See* R. 587–638. 887–78.
[5] In 2016, Plaintiff reported she needed surgery but seemingly was unable to afford it because it was not approved by workman's compensation. R. 956–59.

The fundamental problem with the ALJ's decision is that he failed to explain how the evidence he relied on supported his RFC determination. Although the ALJ claimed that Dr. Yeager's opinion supported his decision, R. 24, a review of the treatment record reveals that the doctor never offered an opinion regarding the height at which Plaintiff would need to elevate her legs. Rather, the doctor simply noted that Plaintiff would need to elevate her legs. R. 967. Consequently, it is unclear, and the ALJ does not explain, how Dr. Yeager's opinion is consistent with a footstool limitation. Moreover, none of the medical evidence or testimony suggests that Plaintiff needed to elevate her legs only as high as a footstool. Thus, it seems that the ALJ reached an independent medical conclusion that was not grounded in any medical evidence in the record. *See McKinnie v. Astrue*, 2010 WL 1257776, at *10 (N.D. Ill. Mar. 26, 2010) (criticizing the ALJ, in part, "impermissibly [making] her own concussions regarding the height [plaintiff] needs to elevate his legs.")

Nonetheless, the Commissioner maintains that there is no error because "no doctor ever opined that plaintiff was more limited than the ALJ found." The Commissioner's argument misses the mark and is predicated on the same mistake the ALJ made in his written decision. The Commissioner assumes, without support, that Dr. Yeager's opinion is consistent with a footstool limitation. As explained above however, Dr. Yeager's opinion did not offer a height limitation. Thus, it is unclear how the opinion supported the ALJ's conclusion that Plaintiff needed to elevate her legs only as high as a footstool, rather than to waist level. *See Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002) ("where the Commissioner's decision lacks evidentiary support…the case must be remanded.") The distinction is critical, given the VE's undisputed testimony that the need to elevate one's legs at waist level would be inconsistent with competitive employment. R. 63. Because the ALJ accepted Dr. Yeager's opinion that Plaintiff

needed to elevate her leg, and because the opinion is ambiguous as to the degree of elevation required, it was the "ALJ's responsibility to recognize the need for further medical evaluations…before making RFC and disability determinations." *Chase*, 458 F. App'x at 557; *see also Scott v. Astrue*, 647 F.3d 734, 741 (7th Cir. 2011); *Ellis v. Astrue*, 2010 WL 3782265, at *15 (N.D. Ind. Sept. 20, 2010) (citing SSR 96-8p.) On remand, the ALJ should use all necessary efforts to build a logical bridge between the evidence in the record, this may include contacting the treating physician to obtain a more detailed explanation about the proffered limitations. *See Cossey v. Berryhill*, 2018 WL 4361927, at *3 (N.D. Ill. Sept. 13, 2018).

### III. CONCLUSION

For the reasons given, the plaintiff's motion for summary judgment [11] is granted, the government's motion for summary judgment [16] is denied, and the case is remanded for further consideration.

Date: January 29, 2019           By: _____
                                      Iain D. Johnston
                                      United States Magistrate Judge